SCHOTT, Judge.
Plaintiffs, Mr. and Mrs. Thomas J. Bou, have appealed from a judgment in their favor against defendants. They seek an increase in awards for medical expenses and general damages. The issue is whether some of the medical problems of Mrs. Bou diagnosed in May, 1977, were caused by the accident of August 15, 1974.
Mrs. Bou was a passenger on defendants’ bus when, as a result of the driver’s negligence in turning the bus, she was thrown from her seat into the seat ahead of her causing injury to her chest and knee. She felt considerable pain on the night of and the day following the accident and consulted her physician, Dr. Louis Balart, on August 16 complaining of pain in the sternum, the right knee, and the third intercostal space. Dr. Balart found a knot in the right sternum area and redness on both sides of the breastbone. According to plaintiff, she began taking medication and was planning to see an orthopedist, all on Dr. Balart’s advice, when she began to experience such severe pain in her chest that on September 5 she sought emergency treatment at Ochs-ner Clinic, where she was placed under the care of Dr. Charles B. Moore, a cardiologist.
Dr. Moore testified as follows: After plaintiff was examined in the emergency room a heart attack was suspected and she was admitted to the hospital. After extensive tests she was discharged on September 12 with the diagnosis of no heart disease and chest pain probably due to costochon-dritis, or an inflammation of the cartilage at the junction of the rib and sternum. Over the next several months she was treated on a regular basis by Dr. Moore who diagnosed anxiety, hyperventilation and cervical sprain. Between November and February her principal complaint was anterior chest wall pain aggravated by deep breathing and bending and Dr. Moore continued to diagnose costochondritis and anxiety. During this period of time she saw Dr. Walter Brent, an orthopedist, and Dr. Kenneth Vogel, a neurological surgeon. Both prescribed various medications and Dr. Vo-gel diagnosed costochondritis. On February 16, 1975, she was treated at the emergency room for severe chest pain and on June 16, when Dr. Moore examined her he diagnosed anxiety, hyperventilation and costochondritis. He continued to see plaintiff but by February, 1976, he could find no reason for the pains which she still described in the right costochondial area. In May she suffered an occurrence of substernal pain with radiation into the left shoulder and nausea leading to her hospitalization for ten days under the care of Drs. Reed and Bienvenu. On at least two occasions, once in March, 1975, and again in May, 1976, she had bouts of atrial fibrillation. Cardiac enzymes and electrocardiograms done on plaintiff were always normal, and even when a stress test was administered the electrocardiogram was normal, although the test was not run to a conclusion because plaintiff began to feel weak and dizzy.
*749 Plaintiff was next treated by Dr. Robert G. Font and was under his care for over a year. Plaintiff did not call him as a witness and the record contains no medical report related to his treatment except for three records of hospitalization at Hotel Dieu: From September 24 to October 2, 1976, January 10 to January 15, 1977, and April 4 to April 6, 1977. The value of these hospital records for our purposes is questionable because they were not introduced as certified copies pursuant to R.S. 13:3714 but rather by stipulation between counsel but with the qualification by defendants and the stated understanding of the trial court that any conclusion or opinions in the hospital records would not be considered in evidence. In any event, having gotten no relief from her chest pains while under Dr. Font’s care she consulted Dr. Mario Blanco, an internist in Miami, Florida, who referred her to Dr. Humberto Machado, a cardiologist.
Dr. Machado gave the following testimony: He first saw plaintiff on May 20 and on May 23 he performed an echocardiogram. This indicated a thickening of the pericardium and a fluid accumulation between the pericardium and the heart muscle. The heart rhythm was abnormal, in a condition of atrial fibrillation. On the basis of his clinical tests he diagnosed pericardial disease and effusion as well as organic heart disease. For the former he recommended a surgical biopsy of the pericardium and for the latter condition, he arranged for cardiac catheterization. The catheterization revealed that plaintiff had coronary artery disease consisting of a single lesion in the left anterior descending branch of the coronary artery. Because of the lesion’s location and the fact that only a single vessel was involved Dr. Machado concluded .that it was caused by blunt cardiac trauma as opposed to arterial sclerosis. The pericardial biopsy was performed by Dr. Robert Sherman, a cardiovascular surgeon, and the pathology report confirmed pericarditis. Dr. Machado regarded these as separate findings, both caused by trauma in the accident of August, 1974.
Dr. Sherman testified as follows: In performing the biopsy on the pericardium it appeared to be normal. Some excess fluid was found in the pericardial space which might be caused by inflammation or by inefficient functioning of the heart itself. He made a larger cut in the pericardium than was usual for a biopsy in order to permit drainage into the chest cavity. During the procedure, he examined the heart itself and found a tiny scar on the wall of the heart which was probably due to the artery blockage. He thought it possible that the blow to the chest could cause damage to the artery, but the blow would have to be severe considering the anatomical protection around the heart. He would not express a firm opinion that plaintiff had pericarditis because his function as a surgeon was to make the biopsy and then leave the diagnosis to the pathologist who examined the tissue. However, he explained that the biopsy would serve not only a diagnostic purpose but also a therapeutic purpose since it would provide for drainage of fluid in the future.
According to plaintiff she had no more pain in the chest after the surgery was performed by Dr. Sherman except on one occasion when she had lifted a heavy suitcase and experienced pain. However, she continued to have irregular heart beats which led her to consult a Dr. Dhurandhar, who likewise did not testify but who admitted her to Touro Infirmary Hospital between February 17 and February 23, 1978. The certified copy of the record is in evidence in accordance with R.S. 13:3714. It shows that her pain was much less severe since the time of her operation until the morning of admission when she had an onset of severe pain, diagnosed as angina.
At the conclusion of the trial before a Commissioner, he provided the court with a lengthy report of his findings and the following conclusions:
“After considering all evidence presented the Court is of the opinion that it remains as uncertain that plaintiff had pericardi-tis. This determination was diagnostically made by Dr. Machado from a pathology report. But neither the pathologist *750 who performed the pericardial biopsy nor the cardiology specialist who performed the cardiac catheterization were produced as witnesses. In contrast, Dr. Sherman, who performed the operation to determine whether or not plaintiff did have pericar-ditis, made it quite clear in his testimony that pericarditis was not his diagnosis, and that his interpretation of the microscopic diagnosis was that the pericardium was essentially normal.
The Court is of the opinion that the most positive objective evidence of cardiac contusion is a change in heart activity and that this would have been evidenced by the tests taken during plaintiff’s first hospitalization following the mini-bus incident. From the evidence presented it must be concluded that upon her initial hospitalization in September of 1974, there were no indications from electrocardiograms taken that plaintiff had intrinsic heart disease. And during that hospitalization, in order to determine if there was any damage to the heart muscle, serial enzymes were obtained over a three day period. These were always normal. Prior to her discharge a stress test for three minutes and five seconds showed no changes on the electrocardiogram, no segments of depression and no irregularity of the heartbeat.
The Court finds that plaintiff, on August 15, 1974, sustained soft tissue injury to her chest, contusion of her right knee and hand.
The plaintiff husband should recover medical expenses incurred through the hospitalization of October 9, 1974, amounting to $2,279.05.
The plaintiff wife should recover in damages for her injuries, pain and suffering and for some ten weeks of disability, resulted from the mini-bus incident, the sum of $4,000.00.”
We readily agree with the Commissioner that plaintiff did not establish to a reasonable degree of certainty that the obstructed or damaged artery was caused by the accident. While Dr. Machado was quite definite in his opinion of traumatic cause, Dr. Moore, also a cardiologist, expressed the opinion that Dr. Machado’s reasoning was fallacious and that trauma would be at the bottom of the list of possibilities for a cause of this condition. Considering that these two medical specialists were of relatively equal professional ability and experience, and their opinions were diametrically opposed to each other, we are not in a better position than the Commissioner was to resolve the conflict, and we leave his finding undisturbed with the result that plaintiff is not entitled to recover for the blocked artery or for the scar on the heart which probably resulted from the damaged artery. All of the symptoms plaintiff had after the pericardial biopsy in May, 1977, are attributable to angina resulting from the blocked artery for which plaintiff is not entitled to recover.
The other conclusions of the Commissioner have provided us with some difficulty. He limited recovery for pain and suffering and spoke of ten weeks of disability in connection therewith, but this conclusion is not supported by the record. Dr. Moore, as late as June, 1975, diagnosed cos-tochondritis based on symptoms and findings which continued from the time of her first visit. Notably the Commissioner did not even mention costochondritis in his report, so he may have overlooked this aspect of plaintiff’s condition entirely in reaching his conclusions. Since the record does not support the award for only ten weeks’ duration of suffering and disability, we conclude that this was a manifestly erroneous finding and that plaintiffs are entitled to recover general damages for pain and suffering and medical expenses, at least until June, 1975, based on the costochondritis.
The final question is with respect to the Commissioner’s rejection of plaintiff’s claim for damages because of the pericarditis. He was not convinced that plaintiff ever had pericarditis and he dismissed Dr. Ma-chado’s opinion as depending upon the report of a pathologist who was not produced as a witness.
However, this conclusion overlooks the fact that Dr. Machado clinically diagnosed pericarditis before the biopsy was run. He *751 testified that he performed an echocardio-gram which indicated a thickening of the pericardium and a fluid collection between the pericardium and the heart muscle, both symptoms of pericarditis. Furthermore, he found atrial fibrillation which had also been found on two occasions by Dr. Moore, and he explained that fibrillation is the result of pericarditis. The pathologist’s report simply confirmed his earlier opinion. Furthermore, under the circumstances of the case we are not inclined to hold that this particular report was inadmissible.
In the first place the report standing alone is meaningless and proves nothing. After giving the volume, color and consistency of the fluid examined it contains the following comment: “There are numerous lymphocytes, macrophages and mesothelial cells present.” There was no further opinion or interpretation in the report.
Dr. Machado testified, over the objection of defendants, lymphocytes are a type of white cells seen in inflammatory processes and their presence with the macrophages and mesothelial cells indicated inflammation of the pericardium.
Had the pathologist’s report contained any diagnostic opinions it would be clearly inadmissible but it simply records the microscopic findings as to the sample.
The hearsay rule serves the interests of justice by guaranteeing to a party the right of confrontation and cross examination. Therefore, it seems appropriate to consider what, in all probability, would have been the result of cross examining this pathologist. The deposition of Dr. Machado was taken over a year after the pathologist made his report. In all probability the deposition of the pathologist taken at the same time would have resulted in his testimony that he has no recollection of this particular specimen of fluid and his simply repeating the words of the report.
Finally, we are influenced by the fact that Dr. Machado’s deposition was taken in Miami where he and the pathologist practiced. At the time of the trial the pathologist was probably not subject to subpoena. The objection to the pathologist’s report was made during the deposition and thereby perpetuated, but the Commissioner did not make a specific ruling on the objection. Had he done so plaintiffs could have, at least, asked for a continuance or arranged to take the pathologist’s deposition or even propounded written interrogations to him for inclusion in the record. Instead, nothing was said about the report of the objection until the Commissioner issued his report after the trial.
We believe our conclusion that the report was admissible under all these circumstances is consistent with prevailing jurisprudence. See the Annotation in 19 ALR 3rd 1008.
Dr. Machado’s testimony that plaintiff had pericarditis was not contradicted. Dr. Sherman did not say that plaintiff did not have pericarditis. He said that his function was to perform a biopsy for diagnostic purposes and would defer to the opinion of the pathologist who examined the tissue. Nevertheless, he testified that there was an excessive amount of fluid in the pericardial cavity, an abnormal condition, but that plaintiff had only a minimal degree of pericarditis, if any. Furthermore, Dr. Sherman’s testimony that the opening remaining in the pericardium after the biopsy would result in continued drainage of fluid from the cavity, and plaintiff’s testimony that she had no more pain following the operation tends to prove that she had pericarditis, this caused pain, and Dr. Sherman’s operation alleviated that pain. Consequently, we have concluded that plaintiff is entitled to recover damages for pain and suffering and expenses from the pericardi-tis.
Accordingly, the judgment is affirmed but amended to increase the judgment in favor of plaintiff Thomas J. Bou to the sum of $17,312.63,[1] and to increase the judgment *752 in favor of Mrs. Bou plaintiff, to the sum of $25,000 against the defendants jointly and in solido with legal interest from date of judicial demand and all costs.
AFFIRMED AND AMENDED.

. This includes the following expenses:
Ochsner Clinic & Hospital $ 3,773.66
Hotel Dieu 2,302.69
American Hospital 5,386.44
Hialeah Hospital 1,784.70
Hialeah Medical Center 225.00
*752 East Jefferson Hospital 103.00
Brpwne-McHardy Clinic 146.00
Dr. Machado 235.00
Dr. Sherman 1,050.00
Dr. Barrera 110.00
Dr. Font 295.00
Dr. Wells 889.00
Dr. Richter 155.00
Dr. Unkauf 157.50
Dr. Brent 45.00
Dr. Vogel 100.00
Prescription Drugs 554.64 Total $17,312.63